IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PATRICK LEE BOHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07-cv-940-HHK |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

<u>UNITED STATES' MOTION FOR SUMMARY JUDGMENT</u>

The United States of America, pursuant to Fed. R. Civ. P. 56, respectfully moves for summary judgment in favor of the United States. As grounds for this motion, the United States submits that Plaintiff is not entitled to statutory damages under 26 U.S.C. § 7431 because the Internal Revenue Service did not knowingly, or by reason of negligence, disclose Plaintiff's return information in violation of 26 U.S.C. § 6103.

A memorandum of law in support of this motion and proposed order are filed concurrently with this motion.

DATE: October 25, 2007

    /s/ Anne E. Blaess           
ANNE E. BLAESS
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Telephone: (202) 616-9806
Facsimile: (202) 514-6966
Email: Anne.E.Blaess@usdoj.gov

OF COUNSEL:
JEFFREY A. TAYLOR
United States Attorney

CERTIFICATE OF SERVICE

IT IS CERTIFIED that the foregoing UNITED STATES' MOTION FOR

SUMMARY JUDGMENT, MEMORANDUM in support, DECLARATION OF

REVENUE AGENT ROBERT A. MAHON, and proposed ORDER were served upon

Plaintiff *pro se* on the 25th day of October, 2007, by depositing a copy in the United

States' mail, postage prepaid, addressed as follows:

> PATRICK LEE BOHALL
> Plaintiff *pro se*
> 3900 Dakota Avenue, # 8
> South Sioux City, NE 68776

　　　　　　　　　　　　　　　　　　 /s/ Anne E. Blaess
　　　　　　　　　　　　　　　　　　 ANNE E. BLAESS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK LEE BOHALL,                    )
                                       )
              Plaintiff,               )
                                       )
       v.                              )   No. 1:07-cv-940-HHK
                                       )
UNITED STATES,                         )
                                       )
              Defendant.               )

MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT

This is a proceeding brought under 26 U.S.C. § 7431, which provides taxpayers

with a claim for statutory and/or actual and punitive damages against the United States

in the event that a Service agent makes an unlawful disclosure of return information in

violation of 26 U.S.C. § 6103.

STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE ISSUE

1. On May 21, 2007, Plaintiff, acting *pro se*, filed his complaint.  (PACER # 1.)

2. On June 14, 2007, Plaintiff filed his amended complaint.  (PACER # 5.)

3. Plaintiff seeks to recover damages under 26 U.S.C. § 7431 for the disclosure of

return information by Internal Revenue Service agents, both named and unnamed in

the amended complaint.  (Am. Compl. ¶ 1.)

4. Plaintiff has not filed returns for the years 2001, 2003, 2004, and 2005.  (Mahon

Decl. ¶ 4.)

5.  Plaintiff is the subject of ongoing examination by the Service.  (*Id.*; Am. Compl. ¶ 4.)

6.  On March 29, 2007, the Service sent Plaintiff a letter informing Plaintiff that a meeting was scheduled for April 11, 2007, to address Plaintiff's outstanding tax liabilities and unfiled tax returns.  (Mahon Decl. ¶ 7.)

7.  On April 11, 2007, approximately ten minutes prior to the time that the scheduled appointment was set to begin, Plaintiff informed the Service via facsimile message that he would not be attending the meeting that day.  (*Id.* ¶ 9.)

8.  On April 12 and 13, 2007, the Service attempted to contact Plaintiff by phone nine times, but Plaintiff did not answer the phone.  (*Id.* ¶ 10.)

9.  On April 23, 2007, agents of the Service caused letters to be mailed to a number of Plaintiff's business associates.  (*Id.* ¶ 13; Am. Compl. ¶ 13.)

10.  The letters disclosed Plaintiff's return information.  (Mahon Decl. ¶ 14.)

11.  On or about May 7, 2007, Plaintiff requested verification from the Service of its disclosures of his return information to third parties by requesting copies of Form(s) 12175, entitled "Third Party Contact Report Form."  (Am. Compl. ¶¶ 7, 8.)

12.  By letter dated May 31, 2007, the Service responded to Plaintiff's request by providing copies of the requested third party contact report forms.  (*Id.* ¶ 9.)

QUESTION PRESENTED

In order to prevail under section 7431, Plaintiff must show by a preponderance of the evidence that (1) the disclosures were not authorized, (2) the disclosures were made knowingly or by reason of negligence, and (3) that the disclosures were made in violation of section 6103.  In the present case, the disclosures were authorized by 26 U.S.C. § 6103, and were therefore not in violation of that section.  Is Plaintiff entitled to recover under section 7431 for such disclosures?

ARGUMENT

1.  Summary Judgment Is Appropriate

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether there is a genuine issue of material fact, the record is viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

2.  There Was No Violation of Section 6103

26 U.S.C. § 6103(a) provides the general rule that returns and return information shall be confidential and may not be disclosed except as authorized by Title 26 of the United States Code.  *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 7 (1987).  26 U.S.C. § 6103(b) defines return information as, among other things,

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether

the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other dates, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) or any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(8) defines disclosures as making known to any person in any manner whatever a return or return information. The United States agrees that Plaintiff's return information was disclosed, as those terms are defined by section 6103.

     a.  *Disclosures of Return Information Are Authorized Under Section 6103*

     26 U.S.C. § 6103 sets forth a number of exceptions to the general rule that returns and returns information are not to be disclosed.  26 U.S.C. § 6103(k)(6) provides that

an internal revenue officer or employee...may, in connection with his official duties relating to any...audit, collection activity, or civil or criminal tax investigation...disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available...with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title.  Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

Therefore, an internal revenue officer may disclose return information during an investigation in order to obtain information provided three requirements are met: (1) the information sought is "with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of [Title 26 of the United States Code]", (2) the information sought is "not otherwise reasonably available," and (3) it is necessary to make disclosures of return information in order to obtain the information sought.  *Payne v. United States*, 289 F.3d

377, 382 (5th Cir. 2002); *DiAndre v. United States*, 968 F.2d 1049, 1052 (10th Cir. 1992).

Any disclosures of return information that meet these requirements are authorized by

section 6103.

26 C.F.R. § 301.6103(k)(6)-1(c)(3) defines "information not otherwise reasonably

available" as

> information that an internal revenue...employee reasonably believes, under the
> facts and circumstances, at the time of a disclosure, cannot be obtained in a
> sufficiently accurate or probative form, or in a timely manner, and without
> impairing the proper performance of the official duties described by this section,
> without making the disclosure.  This definition does not require or create the
> presumption or expectation that an internal revenue...employee must seek
> information from a taxpayer or authorized representative prior to contacting a
> third party witness in an investigation.  Neither the Internal Revenue Code,
> Internal Revenue Service procedures, nor these regulations require repeated
> contacting of an uncooperative taxpayer.  Morever, an internal
> revenue...employee may make a disclosure to a third party witness to
> corroborate information provided by a taxpayer.

26 C.F.R. § 301.6103(k)(6)-1(c)(1) defines "to the extent that such disclosure is necessary

in obtaining information" as

> a disclosure of return information which an internal revenue...employee, based
> on the facts and circumstances, at the time of the disclosure, reasonably believes
> is necessary to obtain information to perform properly the official duties
> described by this section, or to accomplish properly the activities connected with
> carrying out those official duties.  The term necessary in this context does not
> mean essential or indispensable, but rather appropriate and helpful in obtaining
> the information sought.  Nor does necessary in this context refer to the necessity
> of conducting an investigation or the appropriateness of the means or methods
> chosen to conduct the investigation.  Section 61303(k)(6) does not limit or restrict
> internal revenue...employees with respect to the decision to initiate or the
> conduct of an investigation.

Example 1 of 26 C.F.R. § 6103(k)(6)-1(c)(3) explains that if a revenue agent is conducting

an examination of a taxpayer and the taxpayer refuses to cooperate or provide any

information to the revenue agent, that revenue agent may seek information from a third

party witness because information relating to the taxpayer's examination would be

information not otherwise reasonably available because of the taxpayer's refusal to

cooperate and supply any information to the revenue agent.

  b. *The Service's Disclosures in This Case Were Authorized by Section 6103*

  The regulations for section 6103 explain the instances in which disclosures of

return information are authorized by section 6103.  Specifically, 26 C.F.R. §

301.6103(k)(6)-1(a)(1) provides that

> an internal revenue employee...in connection with the performance of official
> duties relating to any examination, administrative appeal, collection
> activity...may disclose return information, of any taxpayer, to the extent
> necessary to obtain information relating to such official duties or to accomplish
> any activity connected with such official duties, including, but not limited to-
> (i) Establishing or verifying the correctness or completeness of any return or
> return information;
> (ii) Determining the responsibility for filing a return, for making a return if none
> has been made, or for performing such acts as may be required by law
> concerning such matters;
> (iii) Establishing or verifying the liability (or possible liability) of any person, or
> the liability (or possible liability) at law or in equity of any transferee or fiduciary
> of any person, for any tax, penalty, interest, fine, forfeiture, or other imposition
> or offense under the internal revenue laws or related statutes or the amount
> thereof for collection.

In the present case, the Service disclosed Plaintiff's return information in the manner

allowed under section 6103(k)(6), therefore no violation of section 6103 occurred.

Specifically, the Revenue Agent Mahon's actions were done in connection with the

performance of his official duties relating to the examination of Plaintiff for unpaid tax liabilities and unfiled tax returns for the years 2003, 2004, and 2005. (*See* Mahon Decl. ¶¶ 1, 2, 3, and 4.) Mahon's actions were necessary to obtain information relating to his duties, namely, the collection of information relating to the examination of Plaintiff's tax liabilities and returns that was not otherwise reasonably available. (*Id.* ¶¶ 7, 9, 10, and 11.)

3. <u>There Can Be No Recovery Under Section 7431</u>

Paired with the anti-disclosure provisions of section 6103 is 26 U.S.C. § 7431, which provides a civil remedy for taxpayers whose return or return information has been disclosed in violation of section 6103. Section 7431(a) specifically provides that

> [i]f any officer of employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

In order to prevail under section 7431, Plaintiff must show by a preponderance of the evidence that (1) the disclosures were not authorized, (2) the disclosures were made knowingly or by reason of negligence, and (3) that the disclosures were made in violation of section 6103. *Flippo v. United States*, 670 F. Supp. 638, 641 (W.D.N.C. 1987), *aff'd*, 849 F.2d 604 (4th Cir. 1988). *See also Fostvedt v. United Staes*, 824 F. Supp. 978, 983 (D. Colo. 1993), *aff'd*, 16 F.3d 416 (10th Cir. 1994).

In the present case, it is clear from the statutes and regulations and from the declaration of Revenue Agent Mahon that the disclosures were authorized under

section 6103(k)(6) and were therefore not in violation of section 6103.  Therefore,

Plaintiff cannot recover under section 7431.

CONCLUSION

Plaintiff is not entitled to recover under 26 U.S.C. § 7431 because the disclosures

of Plaintiff's return information by the Service were authorized by 26 U.S.C. §

6103(k)(6).

DATE: October 25, 2007                           /s/ Anne E. Blaess
                                                 ANNE E. BLAESS
                                                 Trial Attorney, Tax Division
                                                 U.S. Department of Justice
                                                 Post Office Box 227
                                                 Washington, DC 20044
                                                 Telephone: (202) 616-9806
                                                 Facsimile: (202) 514-6966
                                                 Email: Anne.E.Blaess@usdoj.gov

OF COUNSEL:
JEFFREY A. TAYLOR
United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PATRICK LEE BOHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:07-cv-940-HHK |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

<u>DECLARATION OF REVENUE AGENT ROBERT A. MAHON</u>

ROBERT A. MAHON, being of legal age and pursuant to 28 U.S.C. § 1746(2), declares as follows:

1. I am a duly commissioned revenue agent employed by the Internal Revenue Service ("the Service") and assigned to the Sioux City, Iowa post of duty of the Fargo, North Dakota district.

2. As a revenue agent, I am charged with reviewing the tax returns of individuals and businesses so as to determine if the income reported and the expenses claimed are accurately and appropriately shown on the return. I am also charged with reviewing taxpayer books and records in order to determine if the financial information contained therein is accurately reflected on the return.

3. The purpose of this declaration is to detail the factual events pertinent to the disclosure of return information complained of in the above-captioned lawsuit. The facts compiled in this declaration are drawn from the audit file of Patrick Lee Bohall

("the plaintiff") and from my personal knowledge as the revenue agent conducting the audit.

4. I made the disclosures of return information which are the subject of this lawsuit. The disclosures were made in conjunction with my examination of the plaintiff for unpaid tax liabilities and unfiled income tax returns for the years 2003, 2004, and 2005.

5. The disclosures of the plaintiff's return information were made in the form of 30 third-party contact letters dated April 23, 2007, wherein I requested information relating to payments the third parties made to the plaintiff as indicated in Forms 1099 filed with the Service. A copy of one such third-party contact letter is attached as Exhibit A.

6. I began my examination of the plaintiff on March 26, 2007, by reviewing the plaintiff's transcripts of account and other documents pertaining to the plaintiff's tax avoidance scheme involving Corporation Sole statutes, which purport to establish a sham nonprofit organization (religion). A copy of the "Articles of Incorporation for the Office of Overseer and his Successors, a Corporation Sole for Living Legacy Ministry" filed by the plaintiff is attached as Exhibit B.

7. On March 29, 2007, I sent a letter to the plaintiff informing him that an appointment was scheduled for 10:00 am on April 11, 2007, to address the plaintiff's outstanding tax liabilities and unfiled income tax returns. Such appointment was made in accordance with the *Internal Revenue Manual* ("the *IRM*") 4.10.2.7.4. A copy of the

- 2 -

March 29, 2007 letter is attached as Exhibit C. A copy of the *IRM* 4.10.2.7.4 is attached as Exhibit D.

8. In accordance with the *IRM* 4.10.2.7.4.1(8), which requires that taxpayers be advised that contact with third parties may be made, I included copies of Publication 1, entitled "Your Rights as a Taxpayer," and Notice 609, entitled "Privacy Act Notice," as enclosures to my letter to the plaintiff dated March 29, 2007. Publication 1 informs the taxpayer of the potential for third party contacts. The paragraph entitled "Potential Third Party Contacts" reads:

> Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted.

A copy of the *IRM* 4.10.2.7.4.1(8) is attached as Exhibit E. Copies of Publication 1 and Notice 609 are attached as Exhibit F.

9. On April 11, 2007, approximately ten minutes prior to the time that the scheduled appointment was set to begin, the plaintiff informed me by facsimile message that he would not be attending the meeting. A copy of the April 11, 2007 facsimile message is attached as Exhibit G.

10. Thereafter, on April 12, 2007, and April 13, 2007, I attempted to contact the plaintiff by telephone nine times. I noted the times that I placed the calls to the plaintiff

- 3 -

on the bottom of the plaintiff's April 11, 2007 facsimile message. (See Exhibit G.) The plaintiff did not answer the telephone.

11. Because the plaintiff did not file tax returns for the years 2003, 2004, and 2005, but Forms 1099 filed by various contracted entities indicated that payments were made to the plaintiff during the years 2003, 2004, and 2005, and because the plaintiff did not cooperate in efforts to meet and discuss his tax liabilities, at the direction of my Acting Group Manager, I began to compile a list of the Forms 1099 that the Service had received with respect to payments made to the plaintiff.

12. Thereafter, I began making telephone calls to the contracted entities listed on the Forms 1099 for the purpose of obtaining information as to whom I might contact to request information concerning payments made to an individual or company and upon whom I might serve a summons. None of these contacts required that I disclose the plaintiff's name, Social Security Number, or any other return information.

13. On April 23, 2007, at the direction of my Group Manager, I prepared and mailed letters addressed to 30 third-party contracted entities that had filed Forms 1099 with respect to the plaintiff, addressed to those individuals employed therein whom I had determined might have information pertaining to payments made to the plaintiff. (See Exhibit A.)

14. The letters addressed to the third-party contracted entities dated April 23, 2007, contained information found on the Forms 1099 that the contracted entities had submitted to the Service including the plaintiff's name, Social Security Number, and/or

- 4 -

the Employer Identification Number of the plaintiff's business, as well as information pertaining to payments that the contracted entities had made to the plaintiff. The letters did not disclose that the Service is examining or investigating the plaintiff, but, instead, asked that the third-party contracted entities: (1) confirm the information contained in the letter; (2) provide the method of payment; and (3) provide the name of the bank and account number into which the payments made to the plaintiff were deposited. In accordance with the *IRM* 4.2.5.3(4), only that information necessary to obtain information otherwise not reasonably available was disclosed. A copy of the *IRM* 4.2.5.3 is attached as Exhibit H.

15. In accordance with established Service procedures and the *IRM* 4.10.1.6.12.3.1, I recorded each contact that I made with the third-party contracted entities on Forms 12175 and filed the Forms 12175 with the Third Party Contact Coordinator for my region. A copy of the *IRM* 4.10.1.6.12.3.1 is attached as Exhibit I. A copy of one such Form 12175 filed with respect to the plaintiff is attached as Exhibit J.

16. The information sought in the third-party contact letters is with respect to the correct determination of the plaintiff's income, liability for tax, or the amount to be collected from the plaintiff.

17. The information sought in the third-party contact letters is not otherwise reasonably available.

18. It was necessary to make the disclosures of the plaintiff's return information

- 5 -

in the third-party contact letters in order to obtain the information sought.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _8/3/2007_

_Robert A. Mahon_

ROBERT A. MAHON
Revenue Agent
Internal Revenue Service
Midwest Area, Territory - Fargo, North Dakota
3539 Southern Hills Drive
Sioux City, Iowa 51106-4750

# ARTICLES OF INCORPORATION
## FOR
# THE OFFICE OF OVERSEER,
## AND HIS SUCCESSORS,
## A CORPORATION SOLE
## FOR
# LIVING LEGACY MINISTRY



FILED # C24990-03

OCT 1 0 2003

IN THE OFFICE OF
Dean Heller
DEAN HELLER SECRETARY OF STATE

[This Space For Lodging Stamp]

**ONE:**        The name of this Corporation Sole (hereinafter referred to as "Office") is, "The Office of Overseer, and His Successors, a Corporation Sole" for Living Legacy Ministry. This sacred Office is a continuation and fulfillment of the Office first established by those named and unnamed persons inspired by and exclusively dedicated to serving God. A partial listing of their works are specifically referred to in ARTICLE TWO. Any statutory citations, regulations and code references are for illustrative purposes only and are not to be construed to be either an express or implied waiver of any privilege or grant of any statutory jurisdiction, restrictions or other impositions over this perpetual Office as described in, but not limited to ARTICLE THREE. All Inalienable Rights are hereby expressly and explicitly reserved without prejudice or exception.

**TWO:**     (a) This sacred, perpetual Office of the Overseer's relationship to God, is a Corporation Sole being uniquely distinct from any manmade contrivance or legal fiction, and not to be confused with any type of "entity", "person" or "it", is organized for eleemosynary purposes in accordance with sincerely held religious and spiritual beliefs revealed by those prophets whose writings are contained in the sacred writings of the Christian Scriptures (commonly referred to as the [Holy] Bible); natural law; private law; biblical law, certain other sacred writings, the First Amendment to the Constitution for the united States of America; and, without imposing, or consenting to any statutory jurisdiction over this Office, for reasons expressed in foreign writings known as, "Chapter 84" of the foreign body of law known as the "Nevada Revised Statutes" and specific related cross references to same.

        (b) Further, no right of visitation has been granted either by implied or expressed consent, knowingly or otherwise.

Exhibit B

(c)    The mission of Living Legacy Ministry is: To fulfill the Great Commission given by Jesus Christ to proclaim the Good News to all people. To provide the resources and time necessary to help the needy of this world to find salvation in Jesus Christ. To assist family, friends and strangers, as led by God Almighty, with the needs that they may have. To promote a Christian perspective in this anti-Christian environment so that the Name which is above every name, Jesus Christ may be exalted.

**THREE:**        The principal location for conducting the affairs of the Office is in Nevada, politically and geographically free of any statutory jurisdiction imposed by; the UNITED STATES, INC., DC, District of Columbia, STATE OF NEW COLUMBIA, STATE OF IOWA, IA STATE OF NEVADA, NV, ANY DISTRICT OF NEVADA, ANY DISTRICT OF IOWA, COUNTY OF WOODBURY any STATE OF THE UNITED STATES, INC., enclave of jurisdiction or judicial district, including, but without limitation, to any "State" or "Federal area" as described in the Buck Act at 4 U.S.C.S., Sections 105, 106 and 110(d) and (e) respectively and in "*JURISDICTION OVER FEDERAL AREAS WITHIN STATES, Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas Within States*", submitted to the Attorney General and Overseer Eisenhower (Part I, April 1956; Part II, June 1957).

**FOUR:**        The name of the one chosen by God to act as the current Overseer of this Corporation Sole and making these Articles is:

Patrick L. Bohall

350 S Center Street, Suite 500

Reno, Nevada (89501)

**FIVE:**        The current Overseer shall serve in his official capacity until his death or resignation. In the event of the incapacitation, the next succeeding Overseer who is able shall serve in the stead thereof until such time as the previous Overseer is able to resume his duties at his sole and absolute discretion. Upon the death, incapacitation or resignation of the current Overseer, those listed in the Overseer's private records shall succeed consecutively in the order determined by the Overseer. Upon the death or resignation of the Overseer, each successor, in their capacity as Overseer, shall be entitled to appoint any number of successors as deemed necessary in their sole and absolute discretion. Those appointed to act as the succeeding Overseer of their Office will be listed in the private records of the Office of Overseer after considerable prayer and revelation by God.

Exhibit B

**SIX:**              In order to conduct the affairs and protect the privacy of the Office, in the sole and absolute discretion of the Overseer, acting under the direction of God, relying upon the protections of God and not of man.  The Overseer shall have all those powers necessary, including but not limited to the power to:

(a) Resolve any and all disputes in all lawful matters and proceedings whatsoever through biblical required arbitration under the strict guidelines as expressed in the Holy Bible at Matthew 18: 15-20 exclusively, and in accordance with the sincerely held beliefs of the Overseer, at a location convenient and appropriate to the Office of Overseer;

(b) Contract in the same manner and to the same extent as a natural person, consistent with the beliefs of the Overseer, for the purposes of the Office;

(c) Under limited circumstances, borrow or lend money and give promissory notes therefore, secure the payment thereof by mortgage or other lien upon property, real or personal;

(d) Buy, sell, lease, mortgage, and in every way deal in real and personal property in the same manner that a natural person may, without the order of any court;

(e) Receive bequests and devises for the Office's own use or upon trusts to the same extent as natural persons may, subject, however, to the laws regulating the transfer of property by will;

(f) Be a promoter, partner, member, beneficiary, associate or manager of any private partnership, private joint venture, private trust or any other private entity;

(g) Conduct activities, locate offices and exercise the powers granted herein, within or without any State or sovereign land;

(h) Carry on any private business or any number of private businesses;

(i) Appoint attorneys in fact;

(j) Minister to the poor and provide to those in need according to the word of God;

(k) Amend, alter, change, delete, add, repeal and revise any portion or provision of this office and add any word sentence or provision to this Office, and to update when necessary in order to comply with the revealed Divine Law as observed by the Overseer;

(l) Invest in any and all types of investments, not inconsistent with this sacred Office, employ and pay for any form of counseling and/ or services the Overseer may consider advisable;

(m) Engage in any type of trade, trading activity, partnership or any venture, not inconsistent with this sacred Office;

(n) Delegate any power contained herein to any person, office or entity at any time, for any period, in any manner, upon any terms;

(o) Establish any non-statutory Company at the expense of this Office;

(p) Exercise all voting powers attaching to any shares of stock, debentures or other lawful securities at anytime forming part of the hereditaments of this Office, not inconsistent with this sacred Office;

(q) Surrender and deliver-up any lawful securities forming part of the hereditaments of this Office, for such consideration and upon such terms and conditions as may be considered appropriate by the Overseer;

(r) Enter into any lawful agreement with other shareholders or any company, the lawful securities of which may form part of the hereditaments of this Corporation Sole;

(s) Cause any property forming all or part of the hereditaments of this Corporation Sole, to be held in the name of any other human being (wherever resident) as nominee on behalf of this Office;

(t) Deposit lawful securities, title deeds and any other document(s) belonging to or relating to this Office, for safe custody with such human being in such place as the Overseer shall consider appropriate;

(u) Establish bank accounts in any jurisdiction in the world;

(v) Procure and effect either single or multiple registrations of this Office in any country or any number of locations and renew or rescind said registration(s) at any time, for any reason, deemed appropriate by the Overseer;

(w) Appoint any human being as investment counselor and to delegate to any such person at any time for any period in any manner and upon any terms whatsoever, including provision for reasonable remuneration, any or all powers and discretions imposed upon or given to the Overseer by this sacred Office;

(x) Pay out of principal or increase any expenses incurred, or honorarium due for any service provided, on behalf of this Office the Overseer may deem appropriate;

(y) Do any other act, not inconsistent with the Overseer's sincerely held spiritual beliefs, the natural law, private law and biblical law that further any or all of the activities and affairs of this Office.

**SEVEN:**     The period of duration of this Office shall be perpetual. The resignation, incapacitation or death of the Overseer shall have no effect thereby on this Office.

**EIGHT:**     No document, record, bank account, or any other information dealing with the internal affairs or operations of the Office shall be disclosed to any third party, except, if in the sole and absolute discretion of the Overseer that such information be disclosed to further the best interests of the Office.

**NINE:**     The Overseer of this Office shall not be liable for any liabilities of the Office and the Office shall not be liable for any personal liabilities of the Overseer. The succeeding Overseer shall not be held liable for any liabilities, acts, or failures to act of the previous Overseer or for any liabilities of the Office.

**TEN:**          The agent for notification of dispute resolution is:
Tom Binford
319 E Everglade
Fresno, California 93720

**ELEVEN:**          On the dissolution or winding up of the Office, whatever remains belonging to the Office after payment of, or provision for payment of, all debts and liabilities of this Office, shall be distributed by the Overseer exclusively to one or more similar Offices organized and operated for eleemosynary purposes.

**TWELVE:**          No stock or other form of "ownership" related to this Office has or ever shall be issued.

**THIRTEEN:**          Nothing contained within this Office, including but not limited to any reference to any form of identifying number, is intended by this Office and any related natural person, entity, officer, trustee, beneficiary, or other such person to consent to or participate in the "conduct of any trade or business", "commerce" or any business within any alleged federal area as described in ARTICLE THREE.

**FOURTEEN:**          There are no assumed, intended or incidental third party beneficiaries to either this sacred Office, the Office of Overseer of this Corporation Sole, or to any attachment, exhibit, or any other related document, item, material, trust, hereditaments or other property of this Office.

**FIFTEEN:**          The Overseer of this Office may adopt any appropriate seal for the Office of Overseer and may adopt separate and other seals, the use of which may be beneficial to the Office as the Overseer may deem necessary.

**SIXTEEN:**          Whether specifically enumerated or not, all powers granted to the Office of Overseer are absolute, confidential and privileged. All acts of the Overseer are carried out in his sole and absolute discretion and authority. The Overseer is accountable only to God. This sacred Office is dependent upon the spiritual integrity and humility of the person occupying this perpetual Office of Overseer and their sacred relationship with, and exclusive reliance upon, God.

**SEVENTEEN:**  The resident agent is:

Corporate Service Center, Inc.
350 South Center Street, Suite 500
Reno, Nevada 89501

Articles of Incorporation for the Office of Overseer, and His Successors, a Corporation Sole for Living Legacy Ministry

Exhibit B

I, Patrick L. Bohall, an adult of sound mind and full legal capacity, by my mark and seal declare that I am the person who executed the foregoing ARTICLES OF THE OFFICE as the initial incorporator of this non-statutory eleemosynary Office, a Corporation Sole, which is duly authorized in accordance with ARTICLE TWO of this sacred Office and that the foregoing Articles are true and correct to the best of my knowledge.

**SEALED THIS** First day of the Ninth month, in the year of our Lord, Jesus, the Christ, Two Thousand and Three, in the presence of the Almighty Creator.  Let Thy divine will be done now and forevermore, Amen.

By: _____  [L.S.]
       Patrick L. Bohall, Overseer

///

///

///

# 4.10.2.7.4  (05-14-1999)
# Scheduling the Appointment: Overview

1. The purpose of the initial contact, whether by telephone or by letter, is to schedule the initial appointment. The initial contact will also be used to establish the time and place of the examination and the person(s) to be present at the initial interview.

2. Every effort should be made to schedule the initial appointment within 14 days of the first action on the case. This allows for potential rescheduling problems. In the event that the appointment must be rescheduled, see 2.8 below, Scheduling Problems: Overview for additional guidance. Rescheduling the initial appointment beyond 45 days from the first action on the case requires documentation of the group manager's approval.

Exhibit D

## 4.10.2.7.4.1  (05-14-1999)
## Contacting the Taxpayer By Telephone

1. When initial contact is made by telephone, examiners will immediately identify themselves and state the purpose of the call. Examiners will also provide their telephone number and employee identification number. See 4.10.1.6, Taxpayer Rights, for more information on employee identification procedures.

2. During the conversation, the examiner will tell the taxpayer which returns are being examined and the tax period(s) involved.

3. Examiners will briefly explain the examination process to the taxpayer. Ask the taxpayer if a power of attorney is involved or if they plan to secure one. If yes, explain that a Form 2848, Power of Attorney and Declaration of Representative, is needed.

4. Examiners will determine whether the taxpayer has been examined in prior years. If so, the prior examination report should be requested in the initial Information Document Request (IDR), Form 4564.

5. When possible, examiners should generally discuss the issues initially planned to be examined. The taxpayer will also be informed that additional issues may be examined depending upon the information obtained during the examination. If the taxpayer states that he/she will be represented, take care not to begin the examination through questioning in this initial contact, since this may give the impression of attempting to by-pass the representative. If representation must be secured and the taxpayer does not want to schedule an appointment until after a representative is confirmed, allow the taxpayer **a minimum** of 10 business days to secure representation before taking any follow-up action to schedule the appointment (extensions can be granted on a case-by-case basis).

6. Examiners will determine the type of business and records that are maintained. This will assist examiners in preparing the IDR.

7. Determine if there are any indications of collectibility issues. See section 2.4.3 above for more information on collectibility determinations.

8. Examiners will inform the taxpayer that a letter, confirming the scheduled appointment, along with a detailed Information Document Request will be mailed to them. The following documents must be included with the confirmation letter.

    A.  Publication 1, Your Rights As A Taxpayer

Exhibit E

## B.  Notice 609, Privacy Act and Paperwork Reduction Act Notice

9.  For examinations involving joint returns, a confirmation letter will be sent separately to each spouse.

10. Either an appointment letter or a confirmation letter, with the appropriate attachments, is required for all taxpayers selected for examination (this applies to both office and field examination).

11. Examiners should ask for clear directions to the audit site for timely arrival at the initial appointment.

12. Contacts with the taxpayer will not be attempted before 8:00 a.m. or after 9:00 p.m. as prescribed by the Debt Collectors Act.

13. Always ask the taxpayer if they have any questions.

14. The examiner will fully document this contact on Form 9984, Examining Officer's Activity Record.

Exhibit E

# IRS

Department of the Treasury
Internal Revenue Service

**Publication 1**

(Rev. May 2005)

Catalog Number 64731W

www.irs.gov

# Your Rights as a Taxpayer

The first part of this publication explains some of your most important rights as a taxpayer. The second part explains the examination, appeal, collection, and refund processes. This publication is also available in Spanish.

## Declaration of Taxpayer Rights

### I. Protection of Your Rights

IRS employees will explain and protect your rights as a taxpayer throughout your contact with us.

### II. Privacy and Confidentiality

The IRS will not disclose to anyone the information you give us, except as authorized by law. You have the right to know why we are asking you for information, how we will use it, and what happens if you do not provide requested information.

### III. Professional and Courteous Service

If you believe that an IRS employee has not treated you in a professional, fair, and courteous manner, you should tell that employee's supervisor. If the supervisor's response is not satisfactory, you should write to the IRS director for your area or the center where you file your return.

### IV. Representation

You may either represent yourself or, with proper written authorization, have someone else represent you in your place. Your representative must be a person allowed to practice before the IRS, such as an attorney, certified public accountant, or enrolled agent. If you are in an interview and ask to consult such a person, then we must stop and reschedule the interview in most cases.

You can have someone accompany you at an interview. You may make sound recordings of any meetings with our examination, appeal, or collection personnel, provided you tell us in writing 10 days before the meeting.

### V. Payment of Only the Correct Amount of Tax

You are responsible for paying only the correct amount of tax due under the law—no more, no less. If you cannot pay all of your tax when it is due, you may be able to make monthly installment payments.

### VI. Help With Unresolved Tax Problems

The Taxpayer Advocate Service can help you if you have tried unsuccessfully to resolve a problem with the IRS. Your local Taxpayer Advocate can offer you special help if you have a significant hardship as a result of a tax problem. For more information, call toll free 1–877–777–4778 (1–800–829–4059 for TTY/TDD) or write to the Taxpayer Advocate at the IRS office that last contacted you.

### VII. Appeals and Judicial Review

If you disagree with us about the amount of your tax liability or certain collection actions, you have the right to ask the Appeals Office to review your case. You may also ask a court to review your case.

### VIII. Relief From Certain Penalties and Interest

The IRS will waive penalties when allowed by law if you can show you acted reasonably and in good faith or relied on the incorrect advice of an IRS employee. We will waive interest that is the result of certain errors or delays caused by an IRS employee.

## THE IRS MISSION

*PROVIDE AMERICA'S TAXPAYERS TOP QUALITY SERVICE BY HELPING THEM UNDERSTAND AND MEET THEIR TAX RESPONSIBILITIES AND BY APPLYING THE TAX LAW WITH INTEGRITY AND FAIRNESS TO ALL.*

Exhibit F

# Examinations, Appeals, Collections, and Refunds

## Examinations (Audits)

We accept most taxpayers' returns as filed. If we inquire about your return or select it for examination, it does not suggest that you are dishonest. The inquiry or examination may or may not result in more tax. We may close your case without change; or, you may receive a refund.

The process of selecting a return for examination usually begins in one of two ways. First, we use computer programs to identify returns that may have incorrect amounts. These programs may be based on information returns, such as Forms 1099 and W-2, on studies of past examinations, or on certain issues identified by compliance projects. Second, we use information from outside sources that indicates that a return may have incorrect amounts. These sources may include newspapers, public records, and individuals. If we determine that the information is accurate and reliable, we may use it to select a return for examination.

Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, explains the rules and procedures that we follow in examinations. The following sections give an overview of how we conduct examinations.

### By Mail

We handle many examinations and inquiries by mail. We will send you a letter with either a request for more information or a reason why we believe a change to your return may be needed. You can respond by mail or you can request a personal interview with an examiner. If you mail us the requested information or provide an explanation, we may or may not agree with you, and we will explain the reasons for any changes. Please do not hesitate to write to us about anything you do not understand.

### By Interview

If we notify you that we will conduct your examination through a personal interview, or you request such an interview, you have the right to ask that the examination take place at a reasonable time and place that is convenient for both you and the IRS. If our examiner proposes any changes to your return, he or she will explain the reasons for the changes. If you do not agree with these changes, you can meet with the examiner's supervisor.

### Repeat Examinations

If we examined your return for the same items in either of the 2 previous years and proposed no change to your tax liability, please contact us as soon as possible so

we can see if we should discontinue the examination.

## Appeals

If you do not agree with the examiner's proposed changes, you can appeal them to the Appeals Office of IRS. Most differences can be settled without expensive and time-consuming court trials. Your appeal rights are explained in detail in both Publication 5, Your Appeal Rights and How To Prepare a Protest If You Don't Agree, and Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund.

If you do not wish to use the Appeals Office or disagree with its findings, you may be able to take your case to the U.S. Tax Court, U.S. Court of Federal Claims, or the U.S. District Court where you live. If you take your case to court, the IRS will have the burden of proving certain facts if you kept adequate records to show your tax liability, cooperated with the IRS, and meet certain other conditions. If the court agrees with you on most issues in your case and finds that our position was largely unjustified, you may be able to recover some of your administrative and litigation costs. You will not be eligible to recover these costs unless you tried to resolve your case administratively, including going through the appeals system, and you gave us the information necessary to resolve the case.

## Collections

Publication 594, The IRS Collection Process, explains your rights and responsibilities regarding payment of federal taxes. It describes:

- What to do when you owe taxes. It describes what to do if you get a tax bill and what to do if you think your bill is wrong. It also covers making installment payments, delaying collection action, and submitting an offer in compromise.

- IRS collection actions. It covers liens, releasing a lien, levies, releasing a levy, seizures and sales, and release of property.

Your collection appeal rights are explained in detail in Publication 1660, Collection Appeal Rights.

## Innocent Spouse Relief

Generally, both you and your spouse are each responsible for paying the full amount of tax, interest, and penalties due on your joint return. However, if you qualify for innocent spouse relief, you may be relieved of part or all of the joint liability. To request relief, you must file Form 8857, Request for Innocent Spouse Relief no later than 2 years after the date

on which the IRS first attempted to collect the tax from you. For example, the two-year period for filing your claim may start if the IRS applies your tax refund from one year to the taxes that you and your spouse owe for another year. For more information on innocent spouse relief, see Publication 971, Innocent Spouse Relief, and Form 8857.

## Potential Third Party Contacts

Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted.

## Refunds

You may file a claim for refund if you think you paid too much tax. You must generally file the claim within 3 years from the date you filed your original return or 2 years from the date you paid the tax, whichever is later. The law generally provides for interest on your refund if it is not paid within 45 days of the date you filed your return or claim for refund. Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, has more information on refunds.

If you were due a refund but you did not file a return, you generally must file your return within 3 years from the date the return was due (including extensions) to get that refund.

## Tax Information

The IRS provides the following sources for forms, publications, and additional information:

- **Tax Questions:** 1–800–829–1040 (1–800–829–4059 for TTY/TDD)
- **Forms and Publications:** 1–800–829–3676 (1–800–829–4059 for TTY/TDD)
- **Internet:** www.irs.gov
- **Small Business Ombudsman:** A small business entity can participate in the regulatory process and comment on enforcement actions of IRS by calling 1-888-REG-FAIR.
- **Treasury Inspector General for Tax Administration:** You can confidentially report misconduct, waste, fraud, or abuse by an IRS employee by calling 1–800–366–4484 (1–800–877–8339 for TTY/TDD). You can remain anonymous.

Exhibit F

**Department of the Treasury**
**Internal Revenue Service**

## Notice 609
(Rev. December 2004)

### Privacy Act Notice

The Privacy Act of 1974 says that when we ask you for information, we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if you do not provide it and whether or not you must respond under the law.

This notice applies to tax returns and any papers filed with them. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, and penalties.

Our legal right to ask for information is found in Internal Revenue Code sections 6001, 6011, and 6012(a) and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections.

Code section 6109 and its regulations say that you must show your social security number, employer identification number or individual taxpayer identification number on what you file. Section 6109 also requires return preparers to provide their identifying numbers on the return. You must also fill in all parts of the tax form that apply to you. This is so we know who you are and can process your return and papers. You do not have to check the boxes for the Presidential Election Campaign Fund.

We ask for tax return information to carry out the U.S. tax laws. We need it to figure and collect the right amount of tax.

We may give the information to the Department of Justice and to other federal agencies, as provided by law. We may also give it to cities, states, the District of Columbia, and U.S. commonwealths or possessions to carry out their tax laws. And we may give it to

certain foreign governments under tax treaties they have with the United States. We may also disclose this information to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

If you do not file a return, do not give us the information we ask for, or provide fraudulent information, the law says that we may have to charge you penalties and, in certain cases, subject you to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on your tax return. This could make your tax higher or delay any refund. Interest may also be charged.

Please keep this notice with your records. You may want to refer to it if we ask you for other information. If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

Notice **609** (12-2004)
Cat. No. 45963A

✪ *Printed on recycled paper*

*U.S. Government Printing Office: 2005 — 733-109/10041

Exhibit F

To: Robert A. Mahon                                     Date: April 11, 2007

Dear Mr. Mahon,

I received your correspondence dated March 29, 2007 requesting a meeting today at
10:00 a.m. The information you are seeking was already requested by your Oklahoma
City department on January 29, 2007. I have answered their letter and have requested
information from them before proceeding.

I have a lawsuit 7433 currently before the court which covers the years you have
inquired about. It would be improper for us to discuss anything at the current time. If you
have anything else to contribute to this discussion, please be aware that I will be forced to
bring it before the court.

Thank you for your time in this matter.

Sincerely,

Patrick L. Bohall

---

4/12/07  @ 1:25  -  Phone call - got voicemail          454-8755
         @ 2:25  -      "            "
         @ 4:15  -      "       -    "
4/13/07  @ 8:30  -      "            "
         @ 9:30  -      "            "
         @ 1:00         "            "
         @ 2:10         "            "
         @ 3:30         "            "
         @ 4:10         "            "

Exhibit G

# 4.2.5.3  (10-01-2003)
# Investigative Disclosures

1. IRS employees, in connection with their official duties, may disclose return information to a third party to the extent that such disclosure is necessary in obtaining information which is not otherwise reasonably available. IRC § 6103(k)(6) and its implementing regulation, 26 CFR 6103 (k)(6)-1, allow you to make certain investigative disclosures to third parties to obtain information, but only when specific conditions are met.

2. Investigative disclosure rules apply among other things, to IRS employees who are performing official duties relating to examinations or audits.

3. Only return information, not the return itself, may be disclosed. Return information includes:

    A. Taxpayer's identity (name, address, SSN)

    B. Fact of tax investigation

    C. Information taken from a return. Pertinent data (sources and amounts of income, deductions, expenses, etc.) may be extracted from a return and used to solicit information for investigative disclosure purposes.

    ## Note:

    See IRC § 6103(b)(2) for a definition of return information.

4. You should disclose only the minimum amount of information necessary to get the facts or assistance you need for your investigation. Investigative disclosures must be initiated solely to obtain information. This useful investigative tool may be a disclosure in person, by mail, or by the act of using taxpayer information as search terms to access data from the Internet or electronic databases. It allows disclosures to such third parties only when necessary to secure data employees cannot obtain otherwise, or to make initial contact in acquiring the services of a qualified expert (e.g. handwriting analysis or appraisals).

5. An investigative disclosure does not provide for an exchange of information.

    A. **Example:** You ask a third party for copies of invoices for sales made to the taxpayer. After providing the invoices, the third party asks for the current address of the taxpayer to collect a debt. You may not provide the address because that disclosure would be for the benefit of the third party and not necessary to obtain the invoices.

Exhibit H

6. Whenever practical, information should be obtained directly from taxpayers or their authorized representatives. In certain situations, it's obvious that the information you need cannot be obtained from the taxpayer in an accurate, useful, or timely manner. Some examples are when:

   A. The services of an outside appraiser for income, estate or gift tax cases meeting specific requirements (generally in the Internal Revenue Manual) are required.

   B. The taxpayer is unwilling or unable to obtain or provide the requested records.

   C. You need to corroborate a taxpayer's statements or information.

   Additional information can be found at IRM 11.3, Section 21, Investigative Disclosures.

7. Investigative disclosures may be subject to the third party contact rules as required by IRC § 7602 (c). You should follow your functional guidance/procedures as necessary.

Exhibit H

# 4.10.1.6.12.3.1  (05-14-1999)
# Recording Third Party Contacts

1. When a third party contact is made, the employee should complete Form 12175, "Third Party Contact Report."

    A. See subsection 1.6.12.4.3(4) below for specific requirements regarding reprisal determinations.

    B. The employee who makes a third party contact is responsible for complying with these provisions regardless of which function has control of the case.

2. The following information should be included on Form 12175:

    A. Taxpayer TIN

    B. Name control

    C. Identification (badge) number of the employee making the contact

    D. Master File tax codes and tax periods for all periods associated with the contact

    E. Spouse's SSN (if contact is for a joint liability or if the contact relates only to the spouse [secondary TIN])

    F. Date of the contact

    G. Name of party contacted, if known. If unknown, use a descriptive term such as neighbor, business associate, etc. **DO NOT** include the address or telephone number of the third party.

3. When Form 12175 is completed:

    A. Send it to the Area/Service Center RRA 3417 (Third Party Contact) Coordinator daily or as soon as possible

    B. Associate a copy with the case file

    C. Document the activity record to show the action was taken

Exhibit I

## Third Party Contact Report Form

| 1. Taxpayer TIN *(Include appropriate file source code.)*  - 9 5 3 3 | 2. Name Control  B O H A | 3. Employee ID Number  42-15070  **Employee Telephone Number**  712-274-7218 x 337 |
|---|---|---|
| 4. Secondary TIN *(Joint filing 1040 only.)*  _ _ _ _ _ _ _ _ _ _ | | **Employee Mail Stop Number**  sxc 1526 |

**5. Third Party Contact is for:**
*(Please check one )*

Primary TIN  X          Secondary TIN ____          Both ____
*(Note: Check both for joint filing 1040 only.)*

## Contact Information

**6. Date of Contact:**
*(Date format is: yyyy/mm/dd.)*          2007    /  04    /  23

**7. Reprisal Determination**

If fear of reprisal has been indicated, check the box below

☐

**8. Name of Third Party** *(only one 3rd party contact per form.)*   Allianz Life Insurance Company of North America

**8a.** *Check the one category that best describes the third party.*

☐ 1. Individual     ☐ 2. Financial Institution     ☒ 3. Business     ☐ 4. State/Fed. Government Org.     ☐ 5. Other

**9. TE/GE Use Only**          *TE/GE* Determination (EDS) Case Number or National Office Case Control Number

EP Plan Number ___ ___ ___          _ _ _ _ _ _ _ _ _ — _

| 10. MFT/TAX Period | *(Enter all MFT tax periods relating to Primary TIN)* | | Example: 30 MFT | 1999 Year | 12 Month |
|---|---|---|---|---|---|
| 30  2003  12 | | | | | |
| 30  2004  12 | | | | | |
| 30  2005  12 | | | | | |

*This area is for Third Party Coordinator document control tracking use only. Enter Document Sequence Number.*

**Document Sequence Number:**_____

Department of the Treasury - Internal Revenue Service

**Form 12175 (Rev. 02/2001)**
Cat. No. 26796L

Exhibit J

## Instructions for Completing Third Party Contact Report Form 12175

**ENTER ONLY (1) ONE THIRD PARTY CONTACT PER FORM**

1. Enter only (1) one Taxpayer TIN. This is an edited TIN, enter the dashes where appropriate. Include appropriate file source code.

2. Enter the four-letter name control for the taxpayer. Ensure that it is the correct name control for the Taxpayer TIN in Box 1.

3. Enter your Employee Identification Number (badge number or IDRS number), telephone number and your mail stop number (if applicable).

4. Secondary TIN should be entered for joint 1040 situations only.

5. Place a check mark on the appropriate line to indicate whether the third-party contact is for the Primary TIN, Secondary TIN or Both (the Primary TIN and Secondary TIN). Both should only be checked in those situations where there is a jointly filed 1040. Don't check more than one line.

**CONTACT INFORMATION**

6. Enter the date the third party contact was made. Use the following format: yyyy/mm/dd. For example: 1999/01/19.

7. **IF A FEAR OF REPRISAL HAS BEEN INDICATED, CHECK THE "REPRISAL" BOX. WHEN FEAR OF REPRISAL IS INDICATED, ONLY THE FOLLOWING DATA SHOULD BE ENTERED ON THIRD PARTY CONTACT FORM 12175: TAXPAYER TIN, NAME CONTROL, EMPLOYEE ID NUMBER, TELEPHONE NUMBER, MAIL STOP NUMBER, DATE OF CONTACT AND CATERGORY CODE.**

8. Provide the full name of the third party, whenever possible. When the name of the third party isn't known, but the relationship to the taxpayer is, write the term that describes the relationship. For example: wife, mother, brother, neighbor, son, etc. When the name or relationship isn't known, write the occupation. For example: gardener, loan officer, etc. If a business is identified as a third party contact, write the complete name of the business. For example: First National Bank of Richmond, Virginia. For a business contact, employees are required to write only the name of the business, not the name of the employee of the business. In situations where the name of the third party, the relationship, or occupation isn't known, employees should write **"Unknown Person"** as the third party name.

8a. Check the **ONE** box that best describes the third party. 1. Individual; 2. Financial Institution; 3. Business; 4. State/Fed. Government Organization; or 5. Other.

9. **For Tax Exempt and Government Entities (TE/GE) Use Only.** For Employee Plans, enter the three digit Employee Plan Number (place a "P" at the end of Primary TIN in Box 1). If a TE/GE determination, enter the TE/GE Determination Number (EDS) or if assigned to National Office, enter the Case Control Number. Enter control numbers using the following format: 999999999X. 999999999 = the EDS Case Number or National Office Case Control Number. X = case type with values of: E = EP Determination, O = EO Determination, A = EP Division (Headquarters) and B = EO Division (Headquarters).

10. Enter all (2) two digit Master File Tax Class Codes and Tax Periods for the taxpayer to which the third-party contact is related. Use the following format: 30 1999 12. Where 30 = MFT; 1999 = Year; 12 = Month. Note: When an EIN is entered in Box 1, don't enter Individual Master File MFTs. And when an SSN is entered in Box 1, don't enter Business Master File MFTs.

**IT IS IMPORTANT TO LIST ALL TAX PERIODS AND MFTs TO ENSURE PROPER MAILING OF THIRD PARTY CONTACT LISTINGS TO POAs.**

**Privacy Act Notice**

Internal Revenue Code section 7602 (c), added by the IRS Restructuring and Reform Act of 1998, requires the IRS to provide a report to each taxpayer of certain third party contact made with respect to the determination or collection of the taxpayer's tax liability. The information on this form is used to make such reports. The employee identification number is used to permit verification of the contact report information. Failure to provide this information may result in discipline.

**Form 12175 (Rev. 02/2001)**
Cat. No. 26796L

Exhibit J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK LEE BOHALL,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )    No. 1:07-cv-940-HHK
                                       )
UNITED STATES,                         )
                                       )
            Defendant.                 )

ORDER

      Having considered the United States' motion for summary judgment,

memorandum in support thereof, and any oppositions and replies thereto, the Court

concludes that the motion ought to be granted.  Accordingly, it is

      ORDERED that the United States' motion for summary judgment be and is

GRANTED;

      ORDERED that this case be closed.


                                       _____
                                        UNITED STATES DISTRICT JUDGE